# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# SOUTHERN DIVISION
# AT PIKEVILLE

| | |
|---|---|
| **DONALD DWAYNE ADAMS,** | **CIVIL ACTION NO. 7:13-17-KKC** |
| **Plaintiff,** | |
| V. | **OPINION & ORDER** |
| **CAROLYN COLVIN,** <br> **Acting Commissioner of Social Security,** | |
| **Defendant.** | |

*** *** ***

The plaintiff, Donald D. Adams, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## FACTUAL AND PROCEDURAL BACKGROUND

Adams filed his claim for benefits on September 14, 2009, alleging a disability beginning on July 9, 2007. His claim was denied initially on January 20, 2010, and upon reconsideration on February 22, 2010. He then filed a written request for a hearing before an Administrative Law Judge ("ALJ"). After the hearing, the ALJ issued an unfavorable decision on July 18, 2011.

At the time of the alleged onset of disability, Adams was 42 years old with a limited education. (AR 23). He claims to be disabled due to leg pain, a hip replacement, carpal tunnel and wrist pain, tremors, elbow pain, and anxiety. Adams is able to perform light

household chores, has not sought treatment for carpal tunnel, and has worked consistently for most of his adult life despite his tremors. He has a driver's license and uses it when necessary.

In determining whether a claimant has a compensable disability under the Social Security Act (the "Act"), the regulations provide a five-step sequential process which the ALJ must follow. 20 C.F.R. § 404.1520(a)–(e); *see Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

(1) If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id.*

The burden of proof is on the claimant through the first four steps of the process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the ALJ

reaches the fifth step without finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999).

In this case, the ALJ began his analysis at step one by determining that the claimant has not engaged in gainful activity since July 9, 2007, the alleged onset date. (AR 16). At step two, the ALJ determined that Adams suffers from the following severe impairments: right femur/hip fracture and anxiety disorder. In the third step, the ALJ found the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 17).

At step four, the ALJ found that based on consideration of the entire record including all medically determinable evidence, Adams "has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing/walking for six hours out of an 8-hour workday, one hour without interruption; and sitting for six hours out of an 8-hour workday, one hour without interruption." (AR 18). The ALJ further found that "he could occasionally climb stairs, balance, stoop, crouch, kneel or crawl. He should avoid work at heights or around moving machinery and exposure to vibration. He is able to remember simple one and two-step tasks; sustain attention/concentration necessary to complete simple tasks; relate to coworkers/supervisors in a non-public setting; and to adapt to simple changes and avoid hazards in a routine work environment." (AR 18). Pursuant to

his determination of the claimant's residual functional capacity, the ALJ found that Adams is unable to perform any past relevant work as an auto-mechanic.

Finally, at step five, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that the claimant can perform. (AR 23). This conclusion was based on consideration of the claimant's age, education, work experience, and residual functional capacity as well as the testimony of the vocational expert. (AR 23–24).

The Appeals Commission subsequently denied Adams' request for review on February 14, 2013. Adams has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made by proper legal standards. *See Cullip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389–90. However, the Court must review the record as a

whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**ANALYSIS**

On appeal, Adams raises four arguments as to why the ALJ's decision was not supported by substantial evidence. First, Adams contends that the ALJ failed to give proper weight to the treating physician and examining physician when determining his physical and mental impairments. Second, Adams argues that the ALJ erred by not applying the factors set forth in 20 C.F.R. §§ 404.1527(c)(2) and 404.927(c)(2)[1] when he rejected the treating physician's opinion. These arguments are related, as they both raise issues about whether the ALJ erred in evaluating the medical opinions of treating physician Dr. Potter and examining psychologist Mr. Pack.

The third and fourth objections raised by Adams are similarly related. Adams argues that the ALJ erred by not discussing the effect of Adams' tremors on his ability to work. Finally, Adams contends that the ALJ erred by failing to consider the comments of a social security interviewer when the ALJ determined the severity of Adams' tremors. Both of these objections question the ALJ's determination that Adams' tremors were not a severe impairment.

**1. The ALJ Did Not Err in Evaluating the Relevant Medical Opinions**

Substantial evidence supports the ALJ's evaluation of the medical opinions in this case. An ALJ is required to give controlling weight to a treating physician's opinion if it is supported by medically acceptable evidence and is not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("If we find that a treating

---

[1] Adams cites to 20 C.F.R. § 404.1527(d) and § 404.927(d), but the factors he refers to are found at 20 C.F.R. §§ 404.1527(c)(2) and 404.927(c)(2).

source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). But if an ALJ does not give controlling weight to a treating physician, he must provide "good reasons" for his failure to do so. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). In doing so, the ALJ must consider several factors, including the treatment relationship between the source and the claimant; the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; whether the source's opinion is supported by medical signs and findings; the consistency of the source's opinion with the record as a whole; and any relevant specialization of the source.

Adams is incorrect in asserting that the ALJ did not consider the applicable factors when determining to give no weight to the opinion of Ira Potter, M.D. The ALJ made his findings based on the fact that Dr. Potter's opinions were inconsistent with the record as a whole and not supported by medical signs and findings. For example, Dr. Potter opined that Adams was limited to less than a full range of sedentary work due to his lower back pain, osteoarthritis of the hip, and carpal tunnel syndrome. (Exhibit B21F, AR 454–58). But Adams himself acknowledges he is capable of performing light household chores and has never sought treatment for carpal tunnel syndrome. Adams also reported that his only physical problems are "arthritis" and pain. (Exhibit B6F, AR 355). Additionally, the ALJ explained that Dr. Potter's treatment notes indicate that Adams described his pain as only a four on a scale from one to ten and his osteoarthritis is stable. (Exhibit B20F, AR 450). The ALJ noted that Adams does not use any braces or special shoes, and that he was able to return to work only eight months after his surgery. (AR 21). The ALJ found Dr. Potter's

6

medical opinion on these issues inconsistent with both the record and the objective medical evidence.

Similarly, Dr. Potter opined in April of 2010 that Adams could not maintain regular attendance, but gave no explanation as to why. (AR 458). He stated that Adams would be unable to relate to his coworkers and stand up to the stress of engaging productive activity, again with no indication as to what objective tests or criteria supported this opinion. (AR 458). Significantly, Dr. Potter also stated that Adams can maintain concentration/attention, remember locations and procedures, and maintain socially appropriate behavior. (AR 458). The ALJ specifically noted that the record indicates Adams is capable of performing light chores, gets along with family and friends, and drives on a regular basis. (AR 19–20). In deciding to give Dr. Potter's assessment little weight, the ALJ provided a thorough explanation as to how Dr. Potter's opinion was inconsistent with his own treatment notes and the record as a whole. Adams' claim otherwise is in error, and the ALJ's assessment of the medical evidence of Dr. Potter was supported by the substantial evidence.

Adams also objects to the ALJ's determination that the opinion of examining psychologist Phil Pack, M.S., should receive no weight. Again, the ALJ's finding was supported by substantial evidence. Contrary to Adams' assertion, the ALJ reviewed Mr. Pack's opinion and articulated specific reasons why it would receive no weight. Mr. Pack opined that Adams has fair ability to relate to co-workers; deal with the public; use judgment; interact with supervisors; function independently; understand, remember, and carry out detailed job instructions; and behave in an emotionally stable manner. Mr. Pack also opined that Adams would have fair-to-poor ability to deal with work stress; poor ability to maintain attention/concentration; poor ability to understand, remember, and carry out

complex job instructions; poor ability to relate predictably in social situations or demonstrate reliability. (AR 474–76).

But the ALJ also noted that Mr. Pack made these determinations without having all of the psychological evidence before him because the two prior consultative examiner reports were not given to him. (AR 22). Mr. Pack's report was inconsistent with the opinion of the two other consultative examiners: psychiatrist Wayne Edwards and Dennis, Prague, M.D. The ALJ specifically explained that he gave more weight to Edwards due to his specialization in this area as a psychiatrist, a determination the ALJ is permitted to make. *See* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Because Mr. Pack's assessment was based on incomplete psychological evidence and was inconsistent with the opinions of consultative examiner and specialist Edwards, the ALJ gave it no weight. This decision was supported by substantial evidence.

Moreover, the ALJ properly accorded great weight to the opinions of Lea Perritt, Ph.D., and Robert Kendrick, M.D. Perritt opined that Adams would be only moderately limited in the ability to maintain attention and concentration for extended periods (AR 431), but that he could understand and remember one and two-step tasks; could sustain the concentration necessary to complete simple tasks; could relate to coworkers/supervisors in a non-public setting; and could adapt to simple changes and avoid hazards in a routine work environment (AR 433). Kendrick opined that Adams could perform light work, finding no evidence of severe pain in the record. (AR 484–89). These opinions are consistent with the objective medical evidence, which showed no significant mental limitations and mild physical impairments. Dr. Potter's examination in March 2010 showed Adams had intact judgment and insight along with a normal affect and no apparent nervousness or dementia. (AR 452). And although Adams stated he has some difficulties in sustaining attention to

complete tasks, he generally had no mental difficulties. (AR 358). Moreover, in congruence with Kendrick's opinion, the objective medical evidence showed that in February 2008 Adams ambulated well without the use of a cane or crutch (AR 323), and in July 2009 x-rays revealed normal cervical spine, chest, and pelvis (AR 255). In November 2009, Adams showed muscle strength of 5/5 in his arms and normal straight leg raising. (AR 364). He showed no spasm in his spine and no evidence of atrophy. (AR 364). Thus, the objective medical evidence supports the ALJ's decision to give great weight to the opinions of Perritt and Kendrick, and the ALJ's overall weighing of the medical evidence and opinions is supported by substantial evidence.

**2. Substantial Evidence Supports the ALJ's Evaluation of Adams' Tremors**

The remaining errors alleged involve the ALJ's determination of the severity of Adams' tremors. He contends that the ALJ erred in failing to discuss the effect of the tremors on Adams' ability to work, and erred in failing to consider comments made by the social security interviewer regarding how observable the tremors were. Both of these alleged errors lack merit.

To begin, Adams is incorrect in asserting that the ALJ "did not discuss [the] obvious physical limitations [from the tremors], or address how these tremors would or would not affect Adams' ability to perform work duties continuously for an 8 hour day." (DE 11-1, at 14). The ALJ specifically addressed the physical limitations caused by the tremors, finding that although Adams suffers from "essential tremors," "these started when he was a teenager" and "[h]e was able to work with the tremors doing auto mechanic work" for most of his adult life. (AR 21). The ALJ noted that there is no evidence suggesting the tremors have prevented him from working. Moreover, when assessing the claimant's residual

functional capacity, the ALJ specifically discussed how the tremors could limit Adams' ability to handle, feel, push, or pull with his hands. (AR 18–19).

Adams is also incorrect in asserting that the ALJ erred in failing to address comments by J. Nelson, a social security interviewer who noted Adams' physical shaking due to his tremors. The interviewer noted that the claimant's body was shaky as if he "was suffering from Parkinson's disease." (AR 162). The ALJ did not discuss this. However, the ALJ discussed the tremors at length. He acknowledged the claimant's experience with tremors for his entire life, and discussed how the plaintiff lacked objective medical evidence demonstrating that the tremors interfered with his ability to work. Nothing in the interviewer's statement would add to the finding by the ALJ that Adams suffered from tremors.

Even if this Court found that the ALJ's determination regarding the severity of the claimant's tremors was in error, the error would be harmless. When an ALJ incorrectly determines that a particular impairment is not severe, such a finding constitutes harmless error if, as was the case here, the ALJ finds other impairments to be severe. *See Maziarz v. Sec. of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). In this case, the ALJ found that Adams had severe impairments pursuant to step two due to his lower back pain and his anxiety. Accordingly, the ALJ moved on to step three to assess Adams' residual functional capacity, during which the ALJ assessed the impact that the tremors have on his ability to work. Thus, even if this Court assumes the ALJ was in error when he failed to find the tremors to be a severe impairment or failed to consider the comments of the social security interviewer, such an error would be harmless.

\* \* \*

For the reasons stated above, **IT IS ORDERED** that:

1. The plaintiff's motion for summary judgment (DE 11) is **DENIED**;

2. The defendant's motion for summary judgment (DE 12) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgments will be entered contemporaneously with this order.

Dated this 26th day of June, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY